IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD ANAMANYA, | : | Civil  No. 3:11-CV-1394 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Kosik) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| FEDERAL BUREAU OF PRISONS, | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case.

This is a Federal Tort Claims Act lawsuit brought by Richard Anamanya, a federal inmate, on July 27, 2011.  (Doc. 1.)  Anamanya's tort claim concerned an incident on November 30, 2010, when he alleged that he was assaulted by another inmate while in a recreation cage at United States Penitentiary, Lewisburg, sustaining injuries to his lower back, neck and rib cage.  Anamanya claimed that the United States was negligent in that the prison failed to provide a sufficient number of guards to prevent this assault.  (Id.)

One month after he filed this lawsuit,  August 22, 2011, Anamanya received a copy of this Court's Standing Practice Order,  an order which informed the plaintiff of his responsibility to reply to defense motions, and warned the plaintiff in clear and

precise terms of the consequences which would flow from a failure to comply with

briefing schedules on motions, stating:

> If the party opposing the motion does not file his or her brief and any
> evidentiary material within the 14-day time frame, Local Rule 7.6
> provides that he or she shall be deemed not to oppose the moving party's
> motion. The motion may therefore be granted if: (1) the court finds it
> meritorious; or (2) the opposing party fails to comply with Local Rule 7.6
> despite being ordered to do so by the court.

(Doc. 14, p. 3.)

A motion to dismiss has been now pending in this case since October 2011.

(Doc. 15.)  While that motion was pending, Anamanya filed a notice of voluntary

dismissal, (Doc. 28), which stated that he sought to dismiss this case "due to him not

wishing to pursue it at this time." (Id.)  Consistent with the plain language of this

pleading, we liberally construed this document as a motion pursuant to Rule

41(a)(1)(A)(I) of the Federal Rules of Civil Procedure seeking to voluntarily dismiss

this complaint without prejudice, and granted this request.  We then received a letter,

purportedly from the plaintiff, which stated that the plaintiff was being held hostage

and had been forced to file the motion to dismiss.  (Doc. 33.)

In light of these inconsistent statements by the plaintiff regarding his desire to

pursue this action, we ordered that, if the plaintiff wished to reinstate this action, the

plaintiff was required to file a motion to that effect, on or before February 1, 2012.

The defendants were then directed to respond to this motion on or before February 15, 2012. The plaintiff may then file a reply on or before February 29, 2012.

Anamanya filed a timely request to reinstate this action, (Doc. 35), which the United States opposed. (Doc. 36.) On March 2, 2012, we granted the plaintiff's motion to reinstate action (Doc. 35) but also reinstated the defendant's motion to dismiss. We further directed the plaintiff to file a response to the motion to dismiss in accordance with Local Rule 7.6 on or before **March 26, 2012**. (Doc. 37.)

In this March 2, 2012, order we also warned Anamanya as follows:

The Plaintiff is advised that Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the Plaintiff to respond to motions and provides that:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion*. Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.. . . .

It is well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (1991)." Williams v. Lebanon Farms Disposal, Inc., No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). Therefore, failure to comply with this briefing schedule may result in dismissal of this action.

(Id.)

The deadline for the plaintiff's latest motion response has now long passed, and it appears that Anamanya has violated both this Court's Standing Practice Order and the Court's March 2, 2012 briefing order by failing to respond to the motion to dismiss. Since the motion response deadline for these motions prescribed by this Court have now passed without any action on the plaintiff's part to respond to the motion, this motion is now deemed ripe for resolution.

For the reasons set forth below, it is recommended that the motion to dismiss, or in the alternative for summary judgment, should be granted.

II. **Discussion**

A. **Under The Rules of This Court This Motion to Dismiss Should Be Deemed Unopposed and Granted**

At the outset, under the Local Rules of this Court the plaintiff should be deemed to concur in these motions, since the plaintiff has failed to timely oppose the motions, or otherwise litigate this case. These procedural defaults completely

frustrate and impede efforts to resolve this matter in a timely and fair fashion, and under the Rules of this Court warrants dismissal of the action, since Local Rule 7.6 of the Rules of this Court imposes an affirmative duty on the plaintiff to respond to motions and provides that:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion*. Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (1991)." Williams v. Lebanon Farms Disposal, Inc., No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). In this case the plaintiff has not complied with the Local Rules, or this Court's orders, by filing a timely response to this motion. These procedural defaults compel the Court to consider:

[A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. <u>See</u> Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion ...." <u>McCurdy v. American Bd. of Plastic Surgery</u>, 157 F.3d 191, 197 (3d Cir.1998).

<u>Lease v. Fishel</u>, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system.  A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this Court and motivates our system of justice:  'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'." <u>Id.</u>  Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here.  In this case, the plaintiff has failed comply with this Court's orders, and has neglected to comply with Local Rule 7.6 by filing a timely response to the motion to dismiss, or in the alternative for summary judgment, filed by the United States.  These cumulative failures now compel us to

apply the sanction called for under the Local Rules and deem the plaintiff to not oppose this motion.

### B.   Dismissal of this Case Is Also Warranted Under Rule 41

Beyond the requirements imposed by the Local Rules of this Court, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).  Decisions regarding dismissal of actions for failure to prosecute rest in the sound discretion of the Court, and will not be disturbed absent an abuse of that discretion.  Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted).   That discretion, however, while broad, is governed by certain factors, commonly referred to as Poulis factors.  As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

–7–

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a District Court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, No. 10-1877, 2011 WL 2489897, *3 (3d Cir. June 23, 2011)(quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008))  Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a District Court abused its discretion in dismissing a plaintiff's case. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992)." Briscoe v. Klaus, 538 F.3d at 263.  Consistent with this view, it is well-settled that " 'no single Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus,  538 F.3d at 263.  However, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a pro se litigant who is not amenable to any lesser sanction.  See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the <u>Poulis</u> factors weighs heavily in favor of dismissing this action. At the outset, a consideration of the first <u>Poulis</u> factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the plaintiff, who has failed to abide by court orders, and has neglected to litigate this case.

Similarly, the second <u>Poulis</u> factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action. Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight and careful consideration. As the United States Court of Appeals for the Third Circuit has observed:

> "Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." <u>Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund</u>, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." <u>Id</u>. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. <u>Id.</u>; <u>see also Ware v. Rodale Press, Inc</u>., 322 F.3d 218, 222 (3d Cir.2003); <u>Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co.</u>, 843 F.2d 683, 693-94 (3d Cir.1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." <u>Ware</u>, 322 F.3d at 222. Oftentimes, this type of prejudice involves disputes between the parties on discovery matters because the defendants were deprived of necessary information or had to expend costs to obtain court orders for compliance. <u>See, e.g.</u>, <u>Poulis</u>, 747 F.2d at 868 (finding that the defendants were prejudiced where the plaintiffs

did not answer interrogatories, the defendants had to file a motion to compel the plaintiffs' answers, and the defendant had "to file its pre-trial statement without the opportunity to review plaintiffs' pretrial statement which was due to be filed first"); Ware, 322 F.3d at 220-23 (affirming the District Court's conclusion that a defendant had been prejudiced where the plaintiff repeatedly ignored the defendant's discovery request for the plaintiff's computation of damages and did not provide it until one week prior to trial).

Briscoe  v. Klaus, 538 F.3d at 259-60.

In this case the plaintiff's failure to litigate this claim or comply with court orders now wholly frustrates and delays the resolution of this action.  In such instances, dismissal of the case clearly rests in the discretion of the trial judge. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate.  In this regard, while it is evident that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders.' Adams, 29 F.3d at 874; [it is also clear that] conduct that occurs one or two times is insufficient

to demonstrate a 'history of dilatoriness.'" <u>Briscoe v. Klaus,</u> 538 F.3d at 260-61 (some citations omitted).  Here, since filing his complaint in July 2011, the plaintiff has failed to timely file pleadings, and has not complied with orders of the Court. Thus, Anamanya's conduct displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders." <u>Adams,</u> 29 F.3d at 874

The fourth <u>Poulis</u> factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff.  In this setting we must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence.  <u>Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund</u>, 29 F.3d 863, 875 (3d Cir.1994). Here, we find that the plaintiff's actions were willful, and reflect a pattern of willfulness.  At this juncture, when the plaintiff has failed to comply with instructions of the Court directing him to take specific actions in this case, and has violated the Local Rules, the Court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the Court's instructions.

While <u>Poulis</u> also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing <u>Poulis</u> agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders,  lesser sanctions may not be an effective alternative. <u>See, e.g.</u>, <u>Briscoe v. Klaus</u>, 538 F.3d 252, 262-63 (3d Cir. 2008); <u>Emerson</u>, 296 F.3d at 191.  This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion.  In any event, by entering our prior orders, and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail.  The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant.  Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the Court.

Finally, under <u>Poulis</u> we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims.  In our view, however, consideration of this factor cannot save this particular plaintiff's claims, since the plaintiff is now wholly non-compliant with his obligations as a litigant.  The plaintiff cannot refuse to cooperate with this litigation, which  would address the merits of his claims, and then assert the untested merits of these claims as grounds for denying a motion to dismiss.

In any event, it is well-settled that " 'no single <u>Poulis</u> factor is dispositive,' <u>Ware</u>, 322 F.3d at 222, [and it is] clear that 'not all of the <u>Poulis</u> factors need be satisfied in order to dismiss a complaint.' <u>Mindek</u>, 964 F.2d at 1373." <u>Briscoe v. Klaus</u>,  538 F.3d at 263.  Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone, cannot defeat this  motion.

More fundamentally, as discussed below, Anamanya's claims against the United States clearly fail on their merits, yet another factor which favors dismissal of this action.  The legal flaws inherent in these claims are discussed separately below.

**B.**    **<u>The Federal Torts Claims Act Discretionary Function Exemption Applies Here and Compels Dismissal of These FTCA Claims</u>**

At bottom, Anamanya complains that the prison was negligent in that it did not have sufficient staff in place to prevent and deter a wholly unexpected event, an assault upon the plaintiff by a fellow inmate.  Anamanya may not maintain such a negligence claim against the United States under the Federal Tort Claims Act (FTCA).  "The FTCA 'was designed primarily to remove the sovereign immunity of the United States from suits in tort, with certain specific exceptions, to render the Government liable in tort as a private individual would be under like circumstances.'" <u>Sosa v. Alvarez-Machain</u>, 542 U.S. 692, 700 (2004) (quoting <u>Richards v. United States</u>, 369 U.S. 1, 6 (1962)); <u>CNA v. United States</u>, 535 F.3d 132, 138 (3d Cir.

2008).  Under the FTCA federal district courts have jurisdiction over civil actions against the United States for damages "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under the circumstance where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).  A person is permitted to sue under the FTCA to recover damages from the United States for personal injuries that he suffered during confinement in a federal prison that resulted from the negligence of a government employee.  See Rinaldi v. United States, No. 1:09-CV-1700, 2010 U.S. Dist. LEXIS 66024, at *11 (M.D. Pa. July 1, 2010) (Rambo, J.) (citing United States v. Muniz, 374 U.S. 150 (1963)).

The FTCA's waiver of sovereign immunity for tort claims in a prison context is tempered, however, by a number of statutory exemptions including a "discretionary function" exemption set forth in 28 U.S.C. § 2680(a), which provides that liability may not be premised on a claim against a government employee which is "... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty...".

In a federal prison setting:

> To determine if the discretionary function exception applies, a court must first determine if the challenged conduct involves an " 'element of judgment or choice.' " See Mitchell v. United States, 225 F.3d 361, 363 (3d Cir.2000) (citing United States v. Gaubert, 499 U.S. 315, 322-23 (1991) and Berkovitz v. United States, 486 U.S. 531, 536 (1988), and noting that there is no element of judgment or choice if " 'a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow' "). If the challenged conduct involves an element of judgment, a court must go on to consider " 'whether that judgment is of the kind that the discretionary function exception was designed to shield.' " Id.

Brown v. U.S. Justice Dep't., 271 F.App'x. 142, 145 (3d Cir. 2008).  See Koch v. United States,814 F.Supp. 1221, 1227 (M.D.Pa. 1993) (McClure, J.)   The discretionary function "exception 'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals' United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808(1984)."  Cestonaro v. United States,  211 F.3d 749, 753 (3d Cir.2000).  As a jurisdictional boundary line, if an act falls within the discretionary function exception, then there has been no waiver of sovereign immunity as to that conduct and the court lacks subject matter jurisdiction to entertain a tort claim against the United States. See Cohen v. United States, 151 F.3d 1338, 1340 (11th Cir. 1998).

Here, the plaintiff's tort claims, which arise in the context of an inmate assault

within a federal prisoner, transgress this jurisdictional boundary defined by the

FTCA's discretionary function exemption since:

> Courts within this circuit and others have uniformly held that federal
> prisoners' FTCA claims for injuries by fellow inmates are barred by the
> discretionary function exception. See, e.g., Donaldson v. United States,
> 281 F. App'x 75, 76-78 (3d Cir.2008); Castillo v. United States, 166 F.
> App'x  587, 589 (3d Cir.2006); Michtavi v. United States, C.A. No.
> 4:07-CV-0628, 2009 WL 578535, at *9-10 (M.D.Pa. Mar.4, 2009);
> Baker v. United States, C.A. No. 06-147, 2006 WL 3717382, at *6
> (W.D.Pa. Dec. 14, 2006); Macias v. United States, C.A. No. 05-1445,
> 2006 WL 1843111, at *3-4 (D. N.J. June 30, 2006); Redmond v. United
> States, C.A. No. 4:04-CV-231, 2006 WL 709347, at *3-4 (M.D.Pa.
> Mar.20, 2006); Graham v. United States, C.A. No. 97-1590, 2002 WL
> 188573, at *4 (E.D.Pa. Feb.5, 2002). While prison officials have a
> statutory duty to provide for the "safekeeping" of inmates, 18 U.S.C. §
> 4042, this statute leaves the implementation of these duties to the
> discretion of prison officials, and "how best to protect one inmate from
> the threat of attack by another is of the kind that the discretionary
> function exception was designed to shield." Donaldson, 281 F. App'x at
> 77.

Rinaldi v. United States, No. 09-1700, 2010 WL 4642498, *4 (M.D.Pa. Nov. 9,
2010).

Indeed, the United States Court of Appeals for the Third Circuit has spoken

directly to this issue in a way which squarely addresses the question of whether a

federal inmate may maintain a tort claim against the government for its allegedly

negligent placement of a prisoner with other inmates who later harm him.  See, e.g.,

Donaldson v. United States, 281 F. App'x 75, 76-78 (3d Cir.2008); Castillo v. United

States, 166 F. App'x 587, 589 (3d Cir.2006). In terms that are equally applicable here, the court of appeals held that the discretionary function exemption applied in this setting and barred FTCA claims against the government.

In reaching this result the court reasoned that both elements of the FTCA's discretionary function exemption were fully satisfied in this setting. First, the court found that, while the Bureau of Prisons has a statutory obligation to ensure inmate safety, "the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception." Donaldson v. United States, 281 F..App'x. 75, 77 (3d Cir. 2008)(citations omitted). The court of appeals then concluded that:

> [T]he judgment involved in this case- i.e., how best to protect one inmate from the threat of attack by another-"is of the kind that the discretionary function exception was designed to shield." Mitchell, 225 F.3d at 363. Prison administrators should be afforded wide-ranging deference in implementing and executing their policies because their discretion is needed to preserve internal discipline and maintain institutional security. Bell v. Wolfish, 441 U.S. 520, 547-48,(1979). Supreme Court authority underscores the principle that prison officials have discretionary power over the safety of the institutions they operate. See Rhodes v. Chapman, 452 U.S. 337, 349 n. 14,(1981); see also Whitley v. Albers, 475 U.S. 312, 321-22 (1986). Likewise, courts of appeals have applied the discretionary function exception to bar an inmate's claims for injuries he received while incarcerated. See Calderon, 123 F.3d at 948, 951 (discretionary function exception barred FTCA claim despite evidence that BOP officials knew of the threat to inmate and took *no steps* to protect him); Cohen, 151 F.3d at 1344 (discretionary function exception shielded the BOP from FTCA liability, where an inmate that the BOP had misclassified attacked and injured the

plaintiff); <u>Alfrey v. United States</u>, 276 F.3d 557, 565 (9th Cir.2002) (where BOP officials' decision not to relocate an inmate in the face of death threats from his cellmate resulted in the inmate's death, "what steps to take in response to a reported threat" required correctional officers to "set priorities among all extant risks: the risks presented by the reported threat, along with the other risks that inevitably arise in a prison," all of which "implicate social and public-policy considerations."). In accordance with these authorities, we find that the BOP's decisions about how to protect [inmates from assaults by fellow prisoners] are the kinds of judgments that the discretionary function exception was designed to protect.

<u>Id</u>. at 77-78.

These principles apply here and are fatal to this particular FTCA claim.  Since this tort claim is premised upon a negligent failure to protect the plaintiff from assault by fellow inmates, and any question concerning "how best to protect one inmate from the threat of attack by another-'is of the kind that the discretionary function exception was designed to shield,' " <u>Id</u>. at 77, the FTCA's discretionary function exemption shields the United States from liability in this case.

Thus, an analysis this final Poulis factor–the meritoriousness of the plaintiff's claims–reveals that this complaint fail to allege a colorable claim under the FTCA. Given the legal bankruptcy of these claims, we find that all of the <u>Poulis</u> factors call for dismissal of this case.

Having concluded that this *pro se* complaint is flawed in multiple and profound ways, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded

an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, the current complaint fails to state a viable civil rights cause of action, the factual and legal grounds proffered in support of this complaint make it clear that he has no right to relief, and the plaintiff has declined to respond to court orders, or otherwise litigate these claims. On these facts, we conclude that granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, it is recommended that the complaint be dismissed as to all defendants without further leave to amend.

### III.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' Motions to Dismiss or in the alternative for summary judgment (Doc. 15), be GRANTED and the plaintiff's complaint be dismissed without further leave to amend.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen

(14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of July 2012.

_S/Martin C. Carlson_
Martin C. Carlson
United States Magistrate Judge